**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| **JONATHAN D. KOEPPEL** | |
| **Plaintiff,** | |
| **v.** | **CIVIL NO. 2:21-CV-1821** |
| **ST. TAMMANY PARISH SCHOOL BOARD** **and FRANK J. JABBIA** | |
| **Defendant.** | |

## <u>COMPLAINT</u>

Plaintiff Jonathan D. Koeppel states his causes of action against defendants St. Tammany Parish School Board and Frank J. Jabbia, solely in his individual capacity, as follows:

### THE PARTIES

1.     Plaintiff is Jonathan D. Koeppel, a person of age and majority, and a Louisiana citizen residing in St. Tammany Parish.

2.     Defendant is St. Tammany Parish School Board (hereinafter "STPSB"), a statutorily created political subdivision and body corporate of the State of Louisiana.

3.     Defendant is Frank J. Jabbia, solely in his individual capacity, a person of age and majority, and upon information and belief a Louisiana citizen residing in St. Tammany Parish.

### JURISDICTION AND VENUE

4.     The Court has subject-matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question); 29 U.S.C. § 794 (disability discrimination under the Rehabilitation Act); and the First Amendment of the United States Constitution through 42 U.S.C. § 1983 (violation of constitutional rights under color of state law), as more particularly set-out herein.

5.     The Court has supplemental, subject-matter jurisdiction over Mr. Koeppel's Louisiana

state law claims pursuant to 28 U.S.C. § 1367(a) because the state-law claims are so related to his federal law claims that they form part of the same case or controversy as more particularly set-out herein.

6.      The Court has personal jurisdiction over STPSB because it is a statutorily created political subdivision and body corporate of the State of Louisiana, present in all material respects within the Court's jurisdiction.

7.      The Court has personal jurisdiction over Mr. Jabbia, solely in his individual capacity, because he is a Louisiana citizen who, upon information and belief, actually committed the illegal acts giving rise to the causes of action stated herein while physically present in Louisiana, and who, upon information and belief, was physically located in Louisiana at the time this lawsuit was filed.

8.      Venue for Mr. Koeppel's Rehabilitation claims are proper in this Court pursuant to 29 U.S.C. § 794a(a)(1) (incorporating Title VII's venue provision in Rehabilitation cases) and 42 U.S.C. § 2000e–5(f)(3) (the Title VII venue provision) because (1) the unlawful employment practices alleged herein were committed in Louisiana within this judicial district (specifically St. Tammany Parish) and (2) upon information and belief the employment records relevant to this action are found within this judicial district (same).

9.      Venue for Mr. Koeppel's First Amendment, Section 1983, and supplemental state-law claims are proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because all defendants' unlawful acts, as well as Mr. Koeppel's resulting injuries and damages, giving rise to this lawsuit occurred within this judicial district (specifically, St. Tammany Parish) and, accordingly, a substantial part of the events or omissions giving rise to the claims asserted in this lawsuit occurred in this judicial district.

## PROCEDURAL AND STATUTORY REQUIREMENTS

10.     At all relevant times in this case, STPSB employed more than 500 employees.

11.     At all relevant times in this case, STPSB is a federal grant recipient and received federal grant money to support its school programming, including upon information and belief approximately $18 million dollars for school lunches in 2020 through 2021 during Mr. Koeppel's employment in this matter; approximately $500,000 for ROTC programming during the same time period; approximately $60,000 in federal disaster relief during the same time period; and additional, significant amounts of federal grant money related to COVID-19 and STPSB special education, IDEA, and related programming, all during the same time period.

12.     STPSB hired Mr. Koeppel as one of its school teachers on or about June 23, 2020.

13.     STPSB terminated Mr. Koeppel's employment on or about August 18, 2021.

14.     On September 23, 2021, Mr. Koeppel filed a Charge of Discrimination with the Equal Employment Opportunity Commission alleging discrimination and retaliation based on his disability, protected complaints, and STPSB's failure to reasonably accommodate that disability under the Americans with Disabilities Act (Charge No. 461-2021-02225).

15.     After he exhausts his administrative remedies at EEOC regarding his ADA claims, Mr. Koeppel intends to amend this lawsuit to assert additional causes of action for disability, reasonable-accommodation, and retaliation based disparate treatment discrimination under the ADA and Louisiana's Employment Discrimination Law under the same basic facts and theory as Mr. Koeppel's discrimination, reasonable-accommodation, and retaliation claims under the Rehabilitation Act.

## FACTS

**A.     The Plaintiff – Jonathan Koeppel**

16.     Jonathan Koeppel is a 26-year-old man who lives in St. Tammany Parish.

17.     Mr. Koeppel is a licensed, Louisiana teacher who holds a Master of Business Administration degree and is fluent in Spanish.

18.     Mr. Koeppel was a successful Spanish teacher at Fontainebleau High School located outside Mandeville, Louisiana until his termination on or about August 18, 2021.

19.     Prior to his termination, Mr. Koeppel had never received formal discipline during his employment with STPSB.

20.     When not at work, Mr. Koeppel frequently engages in various political activities and activism in his free time.

21.     Mr. Koeppel does not discuss his political activities or beliefs while teaching or in the classroom.

22.     Mr. Koeppel does not engage in political speech or activities while at work or otherwise related to his job responsibilities to the STPSB.

23.     Mr. Koeppel does not interact with his students, even outside of work hours, regarding his political activism or activities.

24.     Mr. Koeppel separates his professional work life from his personal life specifically with respect to his political beliefs, political affiliations, political speech, and political activities.

**B.     The Defendants – St. Tammany Parish School Board and Frank Jabbia**

25.     STPSB is the statutorily created entity and public employer responsible for administering public education to the school children of St. Tammany Parish.

26.     STPSB operates approximately 55 public schools.

27.     STPSB is organizationally structured with a "central office" located in Covington, Louisiana that creates parish-wide policy and serves as the administrative headquarters of the STPSB school system.

28.     At all relevant times of this case, the chief executive officer of STPSB is its superintendent, Frank Jabbia.

29.     As superintendent, Mr. Jabbia is the authorized, final decision maker for all employment related decisions within the STPSB, including all hiring, firing, demotion, promotion, and suspension decisions.

30.     At all relevant times of this case, the Assistant Superintendent of STPSB was Michael Cosse.

31.     In turn, each of STPSB's individual schools is locally administered at the school-level by a principal, who serves as the day-to-day decision maker with respect to employment matters unless and until elevated to the superintendent's office.

32.     During all relevant times of this case, the principal of Fontainebleau High School (FHS) located outside Mandeville, Louisiana was Johnny Vitrano.

33.     During all relevant times of this case, upon information and belief, the Assistant Principal of FHS and Mr. Koeppel's immediate supervisor was Mary Priebe.

34.     At all relevant times, upon information and belief, STPSB maintained a human resources department and employed a director of human resources that served the needs of its school system and employees.

35.     During all relevant times of this case, upon information and belief, the Director of Human Resources was Steve Alfonso.

36.     Thus, during the relevant times of this case and throughout Mr. Koeppel's employment, the following depicts Mr. Koeppel's reporting hierarchy:



Superintendent of St. Tammany Parish Public Schools
(Frank Jabbia)
|
Assistant Superintendent
(Michael Cosse)
|
Principal of FHS
(Johnny Vitrano)
|
Assistant Principal of FHS
(Mary Priebe)
|
Teacher
(Jonathan Koeppel)

**C.     Management Regards Mr. Koeppel as a Conservative Political Activist Based on His Political Speech and Activities**

37.     During these same time periods, Mr. Koeppel engaged in various, political activism including attending and participating in political events, conventions, and public meetings of various elected boards concerning the political issues that Mr. Koeppel cares about, which generally could be accurately described as "conservative" or "Republican" in nature.

38.     Mr. Koeppel is, in fact, a registered Republican voter.

39.     During these same time periods, Mr. Koeppel would occasionally appear in local or national news media concerning political topics and issues.

40.     During these same time periods, Mr. Koeppel also maintained various social media and other online presences.

41.     One aspect of these social media profiles and other online presences, relevant here, was to engage in political speech and discussion related to issues of public concern.

42.     On these profiles, Mr. Koeppel frequently shared video, audio, and his personal accounts

of his real world political activities and political speech.

43.     Mr. Koeppel's political activities and speech were always done as an American citizen, a Louisiana citizen, and a resident of St. Tammany Parish.

44.     Mr. Koeppel's political activities and speech were always unconnected to his job responsibilities as an employee of STPSB.

45.     Mr. Koeppel's political activities and speech did not create disturbances at FHS, or, more generally, St. Tammany Parish public schools, and did not disrupt any learning or educational environment within FHS or the school system.

46.     Nevertheless, because of Mr. Koeppel's real world and online political speech, activities, and media appearances, Principal Vitrano regarded Mr. Koeppel as a "political activist."

47.     Upon information and belief, because of Mr. Koeppel's real world and online political speech, activities, and media appearances, Principal Vitrano and Assistant Principal Priebe regarded Mr. Koeppel as holding conservative-oriented political beliefs and engaging in conservative-oriented political activities, and further regarded Mr. Koeppel as a member of or affiliated with the Republican party.

48.     Upon information and belief, because of Mr. Koeppel's real world and online political speech, activities, and media appearances, Superintendent Jabbia regarded Mr. Koeppel as holding conservative-oriented political beliefs and engaging in conservative-oriented political activities, and further regarded Mr. Koeppel as a member of or affiliated with the Republican party.

49.     Upon information and belief, because of Mr. Koeppel's real world and online political speech, activities, and media appearances, STPSB elected board members regarded Mr. Koeppel as holding conservative-oriented political beliefs and engaging in conservative-oriented political activities, and further regarded Mr. Koeppel as a member of or affiliated with the Republican party.

**D.     Principal Vitrano Holds Animus Against Those He Perceives as Holding Conservative Political Beliefs or Are Affiliated with the Republican Party**

50.     Principal Vitrano ordered all FHS faculty and staff to attend a mandatory meeting at FHS prior to the start of the 2020-2021 school year.

51.     For the 2020-2021 school year, STPSB management required employees to wear face masks during the school day unless the employee sought and was given a medical or disability-based exception.

52.     At the mandatory meeting, Principal Vitrano admonished FHS faculty and staff that they were required to comply with the mask mandate.

53.     Principal Vitrano added derisively that he did not care if any "Trumpers" in the audience did not want to wear masks during the school day, they were required to comply.

54.     Upon information and belief, in the overall context of his comments regarding "Trumpers" and otherwise as alleged throughout this complaint, Principal Vitrano holds animus against his subordinate faculty and staff whom he perceives as holding conservative political beliefs, or who politically supported the Presidential campaign of Donald Trump, or who are members of or affiliated with the Republican party.

**E.     Mr. Koeppel Suffers from a Breathing Disability, and STPSB Exempts Mr. Koeppel from Wearing a Mask**

55.     Mr. Koeppel is disabled because of a deviated nasal septum, allergic rhinitis, and a resulting difficulty to breathe.

56.     Specifically, Mr. Koeppel suffers from a deviated nasal septum which causes nasal airway obstruction.

57.     Mr. Koeppel also suffers from intermittent allergic rhinitis which causes further nasal airway obstruction.

8

58.     Mr. Koeppel has actively treated with an otolaryngologist since approximately 2017 or 2018 for these conditions.

59.     The result of Mr. Koeppel's disabilities and resulting impairments is that his ability to breathe is significantly diminished compared to the general population of people who do not suffer from nasal airway obstructions and disabilities.

60.     Mr. Koeppel's treating physician recommends that Mr. Koeppel not wear a face mask because of his breathing difficulties.

61.     In August 2020, after Principal Vitrano's meeting with FHS staff in which he derisively referred to "Trumpers," Mr. Koeppel requested a medical exemption from STPSB's mask mandate based on his medical disability and breathing impairment.

62.     Mr. Koeppel submitted various medical information to STPSB's human resources office in support of his application.

63.     On September 4, 2020, STPSB's Director of Human Resources, Steve Alfonso, approved the exemption, and communicated that approval to both Principal Vitrano and Assistant Principal Mary Priebe.

64.     Upon information and belief, at least during the 2020-2021 school year, Mr. Koeppel did not know of any other faculty or staff who had obtained a medical exemption from STPSB's mask mandate, and upon further information and belief Mr. Koeppel may have been the only FHS faculty member to receive an exemption.

**F.     Mr. Koeppel Engages in Protected Political Speech at a STPSB Board Meeting in April 2021 and Management Later Discusses the Matter with Mr. Koeppel**

65.     Mr. Koeppel spoke at a STPSB public meeting on or about April 8, 2021.

66.     Mr. Koeppel spoke as citizen and resident of St. Tammany Parish.

67.     Mr. Koeppel's speech was unrelated to his job responsibilities with STPSB and, upon

information and belief, did not cause any disruption to the learning, educational, or work environmental at FHS or within any other STPSB school.

68.    Mr. Koeppel expressed political opinions on issues of public concern, specifically his views on the appropriateness of sex & gender-identity and critical race theory curriculum in St. Tammany Parish public schools.

69.    Mr. Koeppel's political remarks at the STPSB meeting were reposted online and reported in various media outlets and, at best estimate, garnered over 10 million views across social media.

70.    The next day, on or about April 9, 2021, Principal Vitrano summoned Mr. Koeppel to a meeting with himself and Assistant Principal Priebe.

71.    During that meeting, Principal Vitrano indicated that Superintendent Jabbia expressed concern about Mr. Koeppel's public comments and political speech, specifically that parents would now believe that STPSB "promoted" the sorts of curriculum Mr. Koeppel spoke against the night before.

72.    Principal Vitrano warned Mr. Koeppel that he might have a "target on his back" based on his political speech at the STPSB meeting.

73.    Principal Vitrano admitted he knew Mr. Koeppel was a "political activist" concerning, in context, conservative-oriented political issues.

74.    Principal Vitrano expressed that management was under regular, public, political pressure regarding different aspects of STPSB curriculum, including the sorts of curriculum Mr. Koeppel discussed at the STPSB school board meeting the night before.

75.    In context, Mr. Koeppel understood that Mr. Vitrano meant Superintendent Jabbia was upset at Mr. Koeppel for engaging in political speech at the STPSB meeting regarding the appropriateness of certain STPSB curriculum, because now Superintendent Jabbia would face

10

greater, public, political pressure regarding curriculum decisions.

76.     Upon information and belief, based on the facts, circumstances, and context of Principal Vitrano's comments, Superintendent Jabbia held animus against Mr. Koeppel for engaging in political speech at the April 8, 2021 STPSB meeting based on the content of Mr. Koeppel's speech.

**G.     Mr. Koeppel Engages in Protected Political Speech at a STPSB Board Meeting in May 2021 and Management Later Discusses the Matter with Mr. Koeppel**

77.     Mr. Koeppel spoke again at a STPSB public meeting on or about May 13, 2021.

78.     Mr. Koeppel again spoke as a citizen and resident of St. Tammany Parish and, upon information and belief, did not cause any disruption to the learning, educational, or work environmental at FHS or within any other STPSB school.

79.     Mr. Koeppel's speech was unrelated to job responsibilities with STPSB.

80.     Mr. Koeppel again expressed political opinions on issues of public concern, specifically his views on the appropriateness of teaching certain materials, concepts, and political and social ideologies within St. Tammany Parish public schools.

81.     Mr. Koeppel urged the STSBP board members during his political speech to take action and prohibit such concepts, ideologies, or curriculum.

82.     Relatedly, Superintendent Jabbia attended this same STPSB meeting and at one point advocated limiting or eliminating any public comment period unrelated to current agenda items.

83.     At that same meeting, Mr. Koeppel spoke against such a proposal.

84.     Some or all of Mr. Koeppel's political remarks at the STPSB meeting were reposted online and reported in various media outlets.

85.     The next day, on or about May 14, 2021, Principal Vitrano again summoned Mr. Koeppel to a meeting with himself and Assistant Principal Mary Priebe.

86.     During that meeting, in context, Principal Vitrano specifically admonished Mr. Koeppel to

discuss his concerns relevant to any issues relating to STPSB, the school system, or curriculum decisions with Mr. Vitrano instead of publicly speaking about them at STPSB meetings or in other public or online spaces.

87.     Ms. Priebe and Principal Vitrano's comments, in context, were critical of Mr. Koeppel speaking at the STPSB meeting the night before.

88.     Ms. Priebe and Principal Vitrano's comments, in context, were critical of Mr. Koeppel's political activities in general.

89.     Upon information and belief, based on the facts, circumstances, and context of Principal Vitrano's comments, Principal Vitrano and Ms. Priebe held animus against Mr. Koeppel for engaging in political speech at the May 13, 2021 STPSB meeting based on the content of Mr. Koeppel's speech.

90.     Upon information and belief, Superintendent Jabbia along with STPSB board members held animus against Mr. Koeppel because of his political speech, specifically because they disagreed with Mr. Koeppel's political beliefs, or because they perceived that Mr. Koeppel's political speech was critical of them; or otherwise.

**H.     Mr. Koeppel Is Suspended for Not Wearing a Mask While Other Non-Compliant Teachers Were Not Disciplined**

91.     Effective August 4, 2021, Governor Edwards issued proclamation No. 137 JBE 2021 (the Governor's "mask mandate") which, among other things, required all people in Louisiana (including public-school teachers, staff, and students) to wear masks covering their faces and noses under most circumstances while indoors.

92.     However, the Governor's Mask Mandate permitted an exception for people suffering from a medical condition that prevented wearing a mask.

93.     Likewise, Superintendent Jabbia required all STPSB teachers and staff to also wear masks

while on STPSB property except for those, relevant here, who had approved medical exemptions.

94.     Relevant here, Mr. Koeppel was previously exempted by STPSB from wearing a face mask.

95.      On or about August 2, 2021, Mr. Koeppel engaged in political speech on social media outlets critical of the mask mandate and indicating he did not plan to wear a face mask to work for the upcoming school year.

96.     Again, at the time Mr. Koeppel made these remarks, he had been exempted from the mask requirement by STPSB based on his medical disability and related breathing impairments.

97.     Mr. Koeppel along with all other FHS faculty and staff were ordered to come to work on August 3, 2021 for various administrative and housekeeping matters.

98.     Mr. Koeppel arrived to work as ordered on August 3.

99.     Mr. Koeppel did not wear a face mask consistent with his previously approved medical exemption under both the Governor's and STPSB's mask mandate.

100.     Likewise, the majority of other teachers that Mr. Koeppel encountered on August 3 were not wearing masks.

101.     Upon information and belief, most of these other teachers did not have approved medical exemptions excusing them from wearing face masks.

102.     Mr. Koeppel entered the school cafeteria for a faculty-wide breakfast.

103.     Upon entering the cafeteria, Principal Vitrano saw Mr. Koeppel not wearing a mask.

104.     Upon information and belief, Mr. Vitrano knew that Mr. Koeppel was previously exempted from wearing a face mask.

105.     Principal Vitrano approached Mr. Koeppel and relocated him into the adjacent hallway within public view and hearing of fellow faculty and staff members.

106.    Principal Vitrano ordered Mr. Koeppel to leave school property ostensibly because Mr. Koeppel was not wearing a mask.

107.    Principal Vitrano ordered Mr. Koeppel to attend a just cause hearing two days later on August 5, 2021 in advance of formal discipline ostensibly because he was not wearing a mask.

108.    Principal Vitrano produced a pre-written note that provided contact information for the local teachers' union, the St. Tammany Federation of Teachers and School Employees.

109.    Mr. Koeppel objected that the majority of other teachers were not wearing masks.

110.    Principal Vitrano did not respond to that objection and ordered Mr. Koeppel to leave.

111.    Mr. Koeppel complied with the instruction.

112.    Upon information and belief, Principal Vitrano ordered Mr. Koeppel to leave school and initiated the disciplinary process against him because Mr. Vitrano held animus against Mr. Koeppel based on his breathing disability.

113.    Alternatively, upon information and belief, Principal Vitrano ordered Mr. Koeppel to leave school and initiated the disciplinary process against him because Mr. Vitrano refused to reasonably accommodate Mr. Koeppel's bona fide medical disability and related breathing impairments.

114.    Upon information and belief, Mr. Koeppel did not present a direct threat to himself or others.

115.    Upon information and belief, STPSB's previously approved exemption granted to Mr. Koeppel did not impose an undue burden on STPSB.

116.    Alternatively, upon information and belief, Principal Vitrano ordered Mr. Koeppel to leave school and initiated the disciplinary process against him in retaliation against Mr. Koeppel based on his prior political speech and activities described throughout this complaint, including but not limited to Mr. Koeppel's comments at public STPSB meetings critical of management's teaching,

administrative, and curriculum decisions and otherwise online concerning management's renewed mask mandate.

117.    Alternatively, upon information and belief, Principal Vitrano ordered Mr. Koeppel to leave school and initiated the disciplinary process against him in retaliation against Mr. Koeppel based on Principal Vitrano's perception that Mr. Koeppel was a member of or affiliated with the Republican party or other conservative groups or political parties.

118.    After management ordered Mr. Koeppel to leave school pending the disciplinary process, Mr. Koeppel engaged in political activity by posting his thoughts regarding the STPSB mask mandate and what Mr. Koeppel believed was political and disability discrimination online via social media.

119.    During Mr. Koeppel's political speech, he articulated his view that the renewed mask mandate was reflective of a "communist" policy.

120.    At all times, after Mr. Koeppel was dismissed form campus, his political speech was unrelated to his job responsibilities and did not create any disturbances to the teaching or educational environment at FHS or any schools within the STPSB system.

## I.    Principal Vitrano Admits During the Just Cause Hearing that Mr. Koeppel's Discipline Is Based on His Political Speech

120a.    Mr. Koeppel appeared for his just cause hearing on August 5, 2021 as ordered.

121.    Mr. Koeppel was represented by the Federation union.

122.    STPSB management was represented by Principal Vitrano.

123.    Multiple times during the hearing, Principal Vitrano and others did not wear their masks over their noses and mouth.

124.    Principal Vitrano admitted during the hearing that Mr. Koeppel was accused of three instances of unprofessionalism or insubordination:  (1) engaging in political speech on social

media indicating he did not intend to wear a face mask for the upcoming school year; (2) engaging in political speech on social media and referring to management as "communists" after Mr. Koeppel was ordered to leave school on August 3; and (3) engaging in political speech on social media to the extent Mr. Koeppel allegedly encouraged parents to complain to the STPSB regarding the renewed mask mandate.

125.    In his defense, Mr. Koeppel asserted that all his comments were in the form of protected political speech, not related to his job responsibilities, and did not cause any disruption to the work or school environment.

126.    And, in fact, Mr. Koeppel's defenses were true – his comments were protected political speech, made on issues of public concern, not connected with his job responsibilities, made while not working, and upon information and belief caused no actual disruption to the work or school environment.

127.    Relatedly, Mr. Koeppel indicated that he was not required to wear a mask based on his disability, related, breathing impairments, and previously approved medical exemption granted by STPSB.

128.    Principal Vitrano admitted he had reviewed Mr. Koeppel's medical documentation supplied his treating physician regarding his medical disability, related impairments, and recommendation against wearing a face mask.

129.    Nevertheless, Principal Vitrano indicated that he would recommend that Superintendent Jabbia terminate Mr. Koeppel's employment unless Mr. Koeppel agreed to wear a face mask to school.

130.    Mr. Koeppel indicated that he did not agree, based on his disability, and that he believed that Principal Vitrano was subjecting Mr. Koeppel to disability-based harassment and

discrimination.

131.    Based on the hearing, Principal Vitrano did recommend to Superintendent Jabbia that Mr. Koeppel's employment be terminated for cause.

132.    Upon information and belief, Principal Vitrano recommended Mr. Koeppel's termination because Mr. Vitrano held animus against Mr. Koeppel based on his breathing disability.

133.    Alternatively, upon information and belief, Principal Vitrano recommended Mr. Koeppel's termination because of management's refusal to reasonably accommodate Mr. Koeppel's bona fide medical disability and related breathing impairments.

134.    Upon information and belief, Mr. Koeppel did not present a direct threat to himself or others.

135.    Upon information and belief, STPSB's previously approved exemption granted to Mr. Koeppel did not impose an undue burden on STPSB.

136.    Alternatively, upon information and belief, Principal Vitrano recommended Mr. Koeppel's termination in retaliation against Mr. Koeppel based on his prior political speech and activities described throughout this complaint, including but not limited to Mr. Koeppel's comments at public STPSB meetings critical of management's curriculum decisions and otherwise online concerning management's renewed mask mandate.

137.    Alternatively, upon information and belief, Principal Vitrano recommended Mr. Koeppel's termination in retaliation against Mr. Koeppel based on Principal Vitrano's perception that Mr. Koeppel was a member of or affiliated with the Republican party or other conservative groups or political parties.

**J.      Assistant Superintendent Michael Cosse Meets with Mr. Koeppel and Tells Him He Must Wear a Mask Despite His Prior Medical Exemption.**

138.    Immediately after Mr. Koeppel's just cause hearing ended, he traveled to the STPSB

central office in Covington, Louisiana to review his personnel file.

139.     STPSB employees alerted Assistant Superintendent Michael Cosse that Mr. Koeppel was attempting to access his records.

140.     Mr. Cosse asked Mr. Koeppel to speak with him in Mr. Cosse's office, and Mr. Koeppel did so.

141.     During their meeting, Mr. Cosse indicated that STPSB no longer honored Mr. Koeppel's prior medical exemption, and that Mr. Koeppel needed to "file again" for a new exemption.

142.     Mr. Cosse further indicated that Superintendent Jabbia would then personally review any renewed application for exemption.

143.     Upon information and belief, STPSB has no policy providing that medical exemptions regarding face mask accommodations expire at any particular time or at the end of any school year.

144.     Upon information and belief, Mr. Cosse's statement that Mr. Koeppel's prior exemption had expired was arbitrary, or pretextual, or simply fabricated.

145.     Mr. Cosse further indicated that, in the interim, Mr. Koeppel was required to report to work while wearing a mask, despite the fact that Mr. Cosse had actual knowledge of Mr. Koeppel's medical disability and related breathing impairments.

146.     Upon information and belief, STPSB refused to honor its prior medical exemption granted to Mr. Koeppel because management held animus against him based on his breathing disability.

147.     Alternatively, upon information and belief, STPSB refused to honor its prior medical exemption granted to Mr. Koeppel because management refused to reasonably accommodate Mr. Koeppel's bona fide medical disability and related breathing impairments.

148.     Upon information and belief, Mr. Koeppel did not present a direct threat to himself or others.

149.   Upon information and belief, STPSB's previously approved exemption granted to Mr. Koeppel did not impose an undue burden on STPSB.

150.   Alternatively, upon information and belief, STPSB refused to honor its prior medical exemption granted to Mr. Koeppel in retaliation against Mr. Koeppel based on his prior political speech and activities described throughout this complaint, including but not limited to Mr. Koeppel's comments at public STPSB meetings critical of management's curriculum decisions and otherwise online concerning management's renewed mask mandate.

151.   Alternatively, upon information and belief, STPSB refused to honor its prior medical exemption granted to Mr. Koeppel in retaliation against Mr. Koeppel based on management's perception that Mr. Koeppel was a member of or affiliated with the Republican party or other conservative groups or political parties.

**K.     Mr. Koeppel Engages in Protected Political Speech at a STPSB Board Meeting in August 2021**

152.   Later that evening on August 5, 2021, after his just cause hearing concluded, Mr. Koeppel spoke at a public STPSB meeting.

153.   Mr. Koeppel again spoke as a citizen and resident of St. Tammany Parish.

154.   Mr. Koeppel's speech was unrelated to his job responsibilities with STPSB and, upon information and belief, did not cause any disruption to the learning, educational, or work environmental at FHS or within any other STPSB school.

155.   Mr. Koeppel again expressed political opinions on issues of public concern, specifically his views on the appropriateness of Governor Edward's proclamation No. 137 JBE 2021 (the Governor's mask mandate).

156.   Mr. Koeppel urged the STPSB members to vote to reject face coverings for teachers, staff, and students within the St. Tammany Parish school system.

157.    Mr. Koeppel's political remarks at the STPSB meeting were reposted online and reported on various media outlets.

158.    Upon information and belief, Mr. Koeppel's remarks caused both Superintendent Jabbia and STSBP board members to hold animus against Mr. Koeppel because of his political speech, specifically because they disagreed with Mr. Koeppel's political beliefs, or because they perceived that Mr. Koeppel's political speech was critical of them; or otherwise.

**L.    STPSB Suspends Mr. Koeppel Without Pay Immediately After He Spoke at the STPSB Meeting on August 5**

159.    On August 6, 2021, less than 24-hours after Mr. Koeppel engaged in further political speech by speaking at the public STPSB meeting on August 5, Assistant Superintendent Cosse issued Mr. Koeppel a letter suspending him without pay until further notice and prohibiting Mr. Koeppel from entering STPSB property or participating in any STPSB activities.

160.    Mr. Cosse likewise ordered Mr. Koeppel to appear at a second just cause hearing on August 10, 2021 based on Principal Vitrano's recommendation that Mr. Koeppel be terminated for cause.

161.    Upon information and belief, Mr. Cosse suspended Mr. Koeppel without pay, banned him from STPSB property and activities, and subjected him to further discipline because Mr. Cosse and STPSB management held animus against Mr. Koeppel based on his breathing disability.

162.    Alternatively, upon information and belief, Mr. Cosse suspended Mr. Koeppel without pay, banned him from STPSB property and activities, and subjected him to further discipline because Mr. Cosse and STPSB management refused to reasonably accommodate Mr. Koeppel's bona fide medical disability and related breathing impairments.

163.    Upon information and belief, Mr. Koeppel did not present a direct threat to himself or others.

164.    Upon information and belief, STPSB's previously approved exemption granted to Mr.

20

Koeppel did not impose an undue burden on STPSB.

165.     Alternatively, upon information and belief, Mr. Cosse suspended Mr. Koeppel without pay, banned him from STPSB property and activities, and subjected him to further discipline in retaliation against Mr. Koeppel based on his prior political speech and activities described throughout this complaint, including but not limited to Mr. Koeppel's comments at public STPSB meetings critical of management's curriculum decisions and otherwise online concerning management's renewed mask mandate.

166.     Alternatively, upon information and belief, Mr. Cosse suspended Mr. Koeppel without pay, banned him from STPSB property and activities, and subjected him to further discipline in retaliation against Mr. Koeppel based on management's perception that Mr. Koeppel was a member of or affiliated with the Republican party or other conservative groups or political parties.

**M.     Superintendent Jabbia Terminates Mr. Koeppel's Employment after his Second Just Cause Hearing**

167.     Mr. Koeppel appeared for his second just cause hearing as ordered on August 10, 2021.

168.     Mr. Koeppel was represented by the Federation.

169.     Management was represented by Mr. Cosse and Principal Vitrano.

170.     Mr. Cosse did not wear a face mask during most of the hearing.

171.     Mr. Cosse questioned and generally admonished Mr. Koeppel based on his failure to obtain a "new" medical exemption regarding his breathing impairments.

172.     Mr. Cosse questioned and generally admonished Mr. Koeppel based on his online social media and political speech regarding the appropriateness of STPSB's renewed mask mandate.

173.     During the hearing, Mr. Cosse played a recording of Mr. Koeppel's social media political speech made on August 3, 2021 after he was ordered to leave campus by Principal Vitrano, during which Mr. Koeppel described the renewed mask mandate as "communist."

174.    Mr. Cosse specifically admonished Mr. Koeppel that his political speech was "unprofessional," "insubordinate," and "defiant."

175.    Mr. Cosse specifically indicated that he did not believe Mr. Koeppel's political speech was protected under the First Amendment.

176.    Mr. Cosse specifically indicated that Mr. Koeppel was not permitted to "relay to the world" that he believed he was subjected to discrimination or retaliation at work.

177.    Mr. Cosse then played another of Mr. Koeppel's political speeches posted to online social media concerning Mr. Koeppel's political views that the Governor's renewed mask mandate is "communism" and related matters.

178.    Mr. Cosse then played another of Mr. Koeppel's political speeches posted to online social media concerning the Governor's renewed mask mandate.

179.    Mr. Cosse then played another of Mr. Koeppel's political speeches posted to online social media concerning his experiences as a public-school teacher who held conservative political beliefs.

180.    Mr. Cose then continued to read aloud several more of Mr. Koeppel's political commentaries and played other of Mr. Koeppel's political speeches posted to online social media.

181.    The reality is that virtually the entire second just cause hearing convened by Mr. Cosse fixated nearly exclusively around management's belief that Mr. Koeppel should not have engaged in political speech critical of the renewed mask mandate; the STPSB administration or management; and, more generally, that Mr. Koeppel should not have engaged in any political speech while employed by STPSB.

182.    Mr. Cosse concluded the meeting by asking whether Mr. Koeppel would wear a mask to work or apply for another medical exemption.

183.    Mr. Koeppel responded that he had already obtained an exemption and had no further comment.

184.    Mr. Cosse concluded the meeting by again ordering Mr. Koeppel to not participate in any STPSB activity or enter any STPSB property pending management's final decision regarding Mr. Koeppel's employment.

185.    Mr. Cosse specifically indicated that Mr. Koeppel could not vote at any polling place located on STPSB property without first receiving permission from Superintendent Jabbia.

186.    After the hearing concluded, at some point a short time later, Mr. Cosse recommended to Superintendent Jabbia to terminate Mr. Koeppel's employment.

187.    On August 13, 2021, Superintendent Jabbia accepted Mr. Cosse's recommendation and terminated Mr. Koeppel's employment effective August 18, 2021.

188.    Upon information and belief, Mr. Cosse recommended Mr. Koeppel's termination, and Superintendent Jabbia accepted it, because Cosse, Jabbia, and the STPSB board members held animus against Mr. Koeppel based on his breathing disability.

189.    Alternatively, upon information and belief Mr. Cosse recommended Mr. Koeppel's termination, and Superintendent Jabbia accepted it, because Cosse, Jabbia, and the STPSB school board members refused to reasonably accommodate Mr. Koeppel's bona fide medical disability and related breathing impairments.

190.    Upon information and belief, Mr. Koeppel did not present a direct threat to himself or others.

191.    Upon information and belief, STPSB's previously approved exemption granted to Mr. Koeppel did not impose an undue burden on STPSB.

192.    Alternatively, upon information and belief, Mr. Cosse recommended Mr. Koeppel's

termination, and Superintendent Jabbia accepted it, in retaliation against Mr. Koeppel based on his prior political speech and activities described throughout this complaint, including but not limited to Mr. Koeppel's comments at public STPSB meetings critical of management's curriculum decisions and otherwise online concerning management's renewed mask mandate.

193.    Alternatively, upon information and belief, Mr. Cosse recommended Mr. Koeppel's termination, and Superintendent Jabbia accepted it, in retaliation against Mr. Koeppel based on management's perception that Mr. Koeppel was a member of or affiliated with the Republican party or other conservative groups or political parties.

194.    Alternatively, upon information and belief, Mr. Cosse recommended Mr. Koeppel's termination, and Superintendent Jabbia accepted it, in retaliation against Mr. Koeppel based on Mr. Koeppel's prior protected complaint to Principal Vitrano during their August 5, 2021 just cause hearing that management was discriminating against Mr. Koeppel based on his disability and request for reasonable accommodation.

**N.      Management Acted Purposefully and in the Course and Scope of Their Employment**

195.    Upon information and belief, Principal Vitrano knew that his unlawful employment actions alleged in this lawsuit were in violation of both federal and Louisiana state law, but he persisted anyway.

196.    Upon information and belief, Principal Vitrano took his unlawful employment actions against Mr. Koeppel purposefully and within the full course and scope of his employment duties to STPSB.

197.    Upon information and belief, Assistant Superintendent Cosse knew that his unlawful employment actions alleged in this lawsuit were in violation of both federal and Louisiana state law, but he persisted anyway.

198.    Upon information and belief, Mr. Cosse took his unlawful employment actions against Mr. Koeppel purposefully and within the full course and scope of his employment duties to STPSB.

199.    Upon information and belief, Superintendent Jabbia knew that his unlawful employment actions alleged in this lawsuit were in violation of both federal and Louisiana state law, but he persisted anyway.

200.    Upon information and belief, Mr. Jabbia took his unlawful employment actions against Mr. Koeppel purposefully and within the full course and scope of his employment duties to STPSB.

**O.     The Aftermath**

201.    The defendants' unlawful employment actions described throughout this complaint, culminating in Mr. Koeppel's termination, have caused Mr. Koeppel significant lost wages.

202.    The defendants' unlawful employment actions described throughout this complaint, culminating in Mr. Koeppel's termination, have caused Mr. Koeppel significant mental anguish, emotional distress, loss of enjoyment of life, and loss of professional reputation.

203.    The defendants' unlawful employment actions described throughout this complaint, culminating in Mr. Koeppel's termination, have caused Mr. Koeppel significant out of pocket expenses, other monetary damages, costs, and attorney's fees incurred in litigating this matter.

**CAUSES OF ACTION**

**A.     Unlawful Disparate Treatment Discrimination Based on Disability and Failure to Reasonably Accommodate under the Rehabilitation Act against STPSB**

204.    Mr. Koeppel states a cause of action for unlawful disparate treatment discrimination based on disability and failure to accommodate under Section 504 of the Rehabilitation Act against the St. Tammany Parish School Board.   Plaintiff incorporates here all prior allegations in this complaint.

205.    Under Section 504, "[n]o otherwise qualified individual with a disability . . . shall . . . be

25

subjected to discrimination under any program or activity receiving Federal financial assistance[.]". 29 U.S.C. § 794(a). A "program or activity" includes a local, public school system. 29 U.S.C. §§ 794(b)(1)(A) *and also* (b)(2)(B). Relevant here, Section 504 provides a disabled school employee a cause of action for disability discrimination. *See, e.g.*, *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007). Section 504 likewise prohibits an employer from failing to reasonably accommodate an employee's disability related impairments. *Dugger v. Stephen F. Austin State Univ.*, 232 F.Supp.3d 938, 954 (E.D. Tex. 2017) (citing 28 C.F.R. § 35.130(b)(7)). An employee's discrimination claims under Section 504 "are subject to the same analysis" as under the Americans with Disabilities Act. 29 U.S.C. § 794(d) (so providing); *cf. Ortega v. Chertoff*, 600 F.Supp.2d 828, 835 (W.D. Tex. 2008) (so holding).

206.    To make out a prima facie case of disability discrimination under Section 504, a plaintiff must show "(1) he is an individual with a disability; (2) who is otherwise qualified; (3) who worked for a program or activity receiving Federal financial assistance; and (4) that he was discriminated against solely by reason of her or his disability." *Washburn v. Harvey*, 504 F.3d 505, 508 (5th Cir. 2007) (cleaned up). "Disability," as incorporated by reference from the ADA, means that the plaintiff "is disabled, has a record of having a disability, or is regarded as disabled." *E.E.O.C. v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 615 (5th Cir. 2009).

207.    In the first instance, a plaintiff is "disabled" if he suffers from "a physical or mental impairment that substantially limits one or more major life activities of such individual." 42 U.S.C. § 12102(1). Relevant here, an "impairment" is "[a]ny physiological . . . condition . . . affecting one or more body systems, such as . . . respiratory . . . ." 29 C.F.R. § 1630.2(h)(1). An impairment is substantially limiting when considering "the ability of an individual to perform a major life activity as compared to most people in the general population." 29 C.F.R. § 1630.2(j)(1)(ii).

"Major life activities" include but are not limited to "breathing."  29 C.F.R. § 1630.2(i)(1)(i).

208.    An impairment is substantially limiting even if it is episodic in nature or in remission, if when the impairment is present it would be substantially limiting.  29 C.F.R. § 1630.2(j)(1)(vii). The determination of whether an impairment is substantially limiting "is made without regard to the ameliorative effects of mitigating measures."   29 C.F.R. § 1630.2(j)(1)(vi).

209.    An employer also discriminates against a disabled employee when the employer refuses to "mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of [its] business."  *Patton v. Jacobs Eng'g Grp., Inc.*, 874 F.3d 437, 442 (5th Cir. 2017) (citing 42 U.S.C. § 12112(b)(5)(A)). An accommodation is reasonable unless it imposes "undue financial and administrative burdens" on the employer.  *See generally Sch. Bd. of Nassau Cty., Fla. v. Arline*, 480 U.S. 273, 288 n.17 (1987).  Likewise, an employer is required to engage in an "informal, interactive process" to determine "potential reasonable accommodations that could overcome those limitations."   29 C.F.R. §1630.2(o)(2)(iii).

210.    In this case, STPSB represents the local, public school system of St. Tammany Parish and is recognized as a political subdivision under Louisiana state law.  Upon information and belief, STPSB received significant federal funds and grants throughout 2020 and 2021 during Mr. Koeppel's employment and later termination.   Specifically, upon information and belief, approximately $18 million dollars for school lunches; approximately $500,000 for ROTC programming; approximately $60,000 in federal disaster relief; additional, significant amounts of federal grant money related to COVID-19; and significant amounts of additional federal money related to special education, IDEA, and related programming.  Accordingly, STPSB is a covered

employer under Section 504 of the Rehabilitation Act.

211.    Mr. Koeppel, in turn, was a successful Spanish teacher with no disciplinary record until he was ordered to leave Fontainebleau High School on August 3, 2021 because, ostensibly, he was not wearing a mask.  Mr. Koeppel suffers from a bona fide medical disability which impairs his respiratory system – a deviated septum and restricted nasal airway along with allergic rhinitis – which in turn substantially limits Mr. Koeppel's ability to breathe.  Mr. Koeppel has actively treated with an otolaryngologist since approximately 2017 or 2018 for these conditions.  In August 2020, Mr. Koeppel submitted medical documentation from his physician to STPSB indicating that, based on Mr. Koeppel's disability and breathing impairment, he was restricted from wearing a face mask.  On or about September 2, 2020, STPSB through its Director of Human Resources approved Mr. Koeppel's exemption from wearing a face mask while at work.  This apparently sufficed for the 2020-2021 school year.

212.    However, on August 3, 2021, leading up to the start of the 2021-2022 school year, Superintendent Jabbia required all STPSB employees to again comply with Governor Edwards's renewed mask mandate effective August 4, 2021.  Even though the Governor's renewed mandate explicitly exempted people who could not wear face masks because of medical-related impairments, upon information and belief, STPSB management held animus against Mr. Koeppel based on his respiratory disability and breathing impairments because it prevented Mr. Koeppel from wearing a face mask during this second push of COVID-19 restrictions.

213.    On August 3, 2021 and again during their first just cause hearing on August 5, Principal Vitrano specifically indicated that Mr. Koeppel was subject to discipline because he was not wearing a face mask, despite having actual knowledge of Mr. Koeppel's disability, impairment, and his prior exemption from the original mask mandate.   Assistant Superintendent Cosse

reiterated the same during Mr. Koeppel's second just cause hearing on August 10.   Upon information and belief, Superintendent Jabbia then terminated Mr. Koeppel because of his disability and related breathing impairments because of this unlawful animus.

214.   Alternatively, management had actual knowledge of Mr. Koeppel's disability, impairments, and request for reasonable accommodation, and owed Mr. Koeppel the duty to engage in the interactive process with him and to reasonably accommodate his impairments.   Mr. Koeppel did not present a direct threat to himself or others because of his disability or requested accommodation (indeed, STPSB management previously granted Mr. Koeppel's exemption from wearing a face mask without incident).   Allowing Mr. Koeppel to forgo wearing a face mask did not cause any undue hardship on STPSB.   Management nevertheless refused to reasonably accommodate Mr. Koeppel in any number of ways that it could have other than requiring Mr. Koeppel to wear a face mask: by permitting him to work without a face mask; permitting him to wear a face shield; reorganizing his classroom so he was more than six feet apart from his students while teaching; permitting Mr. Koeppel to provide periodic proof of non-infection from COVID-19; permitting Mr. Koeppel to provide proof of prior COVID-19 infection, recovery, and present antibodies; and so on.   Principal Vitrano specifically admitted during the first just cause hearing against Mr. Koeppel that the "essence" of management's complaint against him was that he would not (or could not) "comply" with wearing a mask.

215.   At all times, Principal Vitrano, Assistant Superintendent Cosse, and Superintendent Jabbia took their adverse employment actions against Mr. Koeppel in the course and scope of their employment responsibilities to STPSB.   Upon information and belief, these men recommended and did terminate Mr. Koeppel's employment because of their animus against him based on his disability.

216.    Alternatively, STPSB management terminated Mr. Koeppel based on their refusal to reasonably accommodate his known disability and breathing impairment.

217.    Accordingly, STPSB is liable to Mr. Koeppel for all damages arising from their unlawful employment conduct, including Mr. Koeppel's lost back wages, lost future wages, economic damages, non-economic damages, statutory damages, and reasonable attorney's fees and costs incurred in this matter.

**B.    Unlawful Disparate Treatment Discrimination Based on Retaliation under the Rehabilitation Act against STPSB**

218.    Mr. Koeppel states a cause of action for unlawful disparate treatment discrimination based on retaliation under Section 504 of the Rehabilitation Act against the St. Tammany Parish School Board.  Plaintiff incorporates here all prior allegations in this complaint.

219.    "The Rehabilitation Act prohibits retaliation against individuals who have opposed discriminatory employment practices or made charges of discrimination." *Cohen v. Univ. of Texas Health Sci. Ctr.*, 557 Fed.Appx. 273, 277 (5th Cir. 2014).  Analysis of a retaliation claim under Section 504 is identical as under the ADA.  *Id.*  In a circumstantial-evidence case, the classic *McDonnell Douglas* burden-shifting framework applies.  *Id.*

220.    Otherwise, a plaintiff establishes a prima facie case of retaliation by showing that "(1) she participated in an activity protected under the statute; (2) her employer took an adverse employment action against her; and (3) a causal connection exists between the protected activity and the adverse action." *Feist v. Louisiana, Dep't of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 454 (5th Cir. 2013).  A plaintiff may satisfy the causal connection element "by showing '[c]lose timing between an employee's protected activity and an adverse action against him.'"  *Id.* (internal citations omitted).

221.    On August 5, 2021, Mr. Koeppel appeared for his first just cause hearing with Principal

Vitrano.  At the conclusion of that meeting, Mr. Koeppel alleged that Principal Vitrano and management were harassing and discriminating against Mr. Koeppel based on his disability and prior request for accommodation.   Principal Vitrano appeared offended by Mr. Koeppel's accusation and argued about the matter.  Although management took the stated the position that Mr. Koeppel was required to "comply" with STPSB's renewed mask mandate, this appears pretextual in the overall context that STPSB had previously approved Mr. Koeppel's request for an exemption to the mask mandate less than a year ago without any intervening change in circumstances.  Superintendent Jabbia decided to terminate Mr. Koeppel's employment eight days later on August 13, 2021.  Upon information and belief, the real reason management terminated Mr. Koeppel was in retaliation against him for complaining that management were engaged in harassment and discrimination against Mr. Koeppel based on his disability.

222.    Accordingly, STPSB is liable to Mr. Koeppel for all damages arising from their unlawful employment conduct, including Mr. Koeppel's lost back wages, lost future wages, economic damages, non-economic damages, statutory damages, and reasonable attorney's fees and costs incurred in this matter.

**C.    Unlawful Disparate Treatment Discrimination Based on Political Activities and Affiliation under La. Rev. Stat. Ann. § 23:961 against STPSB**

223.    Mr. Koeppel states a cause of action for unlawful disparate treatment discrimination based on his political activities and affiliations under La. Rev. Stat. Ann. § 23:961 against STPSB. Plaintiff incorporates here all prior allegations in this complaint.

224.    Louisiana statute prohibits any employer with 20 or more employees from making or enforcing any rule or policy "forbidding or preventing any of his employees from engaging or participating in politics[.]"  La. Rev. Stat. Ann. § 23:961.  Section 23:961 likewise forbids any employer from coercing, influencing, or attempting to coerce or influence any employee from

participating "in political activities of any nature or character." *Id.*  Section 23:961 likewise forbids any employee from punishing or terminating any employer "should [he] support or become affiliated with any particular political faction or organization[.]" *Id.*  In a civil action, an employee unlawfully terminated because of his political activities or affiliations is entitled to recover "damages from the employer as a result of suffering caused by the employer's violations of [Section 23:961]." *Id.*

225.    Likewise, under Section 23:961, an employer who terminates an employee for engaging in political activity necessarily "develop[s] a proscribed policy as a result of [the activity]" in violation of the statute.  *Davis v. La. Computing Corp.*, 394 So.2d 678, 679-80 (La. Ct. 4 App. 1981).  Under Section 23:961, an employer's legitimate business justification does not provide an exception to liability.  *Id.*

226.    In this case, Mr. Koeppel was a successful Spanish teacher with no disciplinary history whatsoever until he was removed from campus on August 3, 2021.  Upon information and belief, Principal Vitrano held animus against subordinates he perceived as politically conservative or affiliated with the Republican party.  Principal Vitrano derisively referred to members of his staff who opposed STPSB original mask mandate as "Trumpers."  Principal Vitrano admitted on several occasions that he knew Mr. Koeppel was a "political activist."  Mr. Vitrano admitted that he had reviewed some of Mr. Koeppel's conservative-oriented political speech and content.  On May 14, 2021, Principal Vitrano and Assistant Principal Priebe admonished Mr. Koeppel not to engage in political speech at STPSB meetings, and to instead bring Mr. Koeppel's public concerns regarding teaching, administrative, and curriculum decisions to Principal Vitrano privately.  Principal Vitrano previously indicated that Superintendent Jabbia expressed displeasure that Mr. Koeppel had engaged in political speech at STPSB meetings.  Upon information and belief, Mr. Jabbia

previously suggested that public-comment periods unrelated to stated agenda items should be discontinued at STPSB board meetings, and upon information and belief Mr. Jabbia was likewise upset that Mr. Koeppel spoke against that proposal.

227.    Upon information and belief, STPSB management held animus against Mr. Koeppel based on his conservative political speech, activities, and perceived political affiliations, and retaliated against Mr. Koeppel based on his protected political speech.  Upon information and belief, Principal Vitrano removed Mr. Koeppel from campus, subjected him to discipline, and recommended his termination because of Mr. Koeppel's conservative political speech, activities, and perceived political affiliations.  Upon information and belief, Assistant Superintendent Cosse likewise recommended Mr. Koeppel's termination for these same reasons, and Superintendent Jabbia accepted the recommendation and did terminate Mr. Koeppel's employment based on this same retaliatory, political animus.

228.    As alleged throughout this complaint, Mr. Koeppel's political speech and activities were always on matters of public concern, specifically the appropriateness of certain public-school teaching, management, and curriculum decisions, as well as the appropriateness of both Governor Edwards and STPSB's renewed mask mandate.  Mr. Koeppel's political speech and activities were never done while working or on duty.  Mr. Koeppel's political speech and activities were done as a citizen and never related to his job responsibilities to STPSB.  Mr. Koeppel did not discuss his political views with his students or while in class.  Mr. Koeppel's political speech and activities, done as a citizen while away from work, did not cause any disruption to the learning, educational, or work environment at FHS or more generally the St. Tammany Parish public school system. Furthermore, upon information and belief, STPSB had no legitimate business interest in curtailing Mr. Koeppel's political speech or activities as a matter of Louisiana state law, because Louisiana

state law forbids discrimination based on political speech, activities, or political affiliations. STPSB had no legitimate business interest in curtailing Mr. Koeppel's political speech and activities otherwise, because Mr. Koeppel's speech and activities were not disruptive to STPSB or the educational or work environment.

229.    Rather, STPSB administrators held animus against Mr. Koeppel because he spoke at public meetings and in public places in ways that administrators felt were critical of either themselves or STPSB, and because they perceived Mr. Koeppel as affiliated with conservative or Republican groups (whether because management was inherently biased against those groups, or because they believed that Mr. Koeppel's perceived affiliation made his political speech and activities more upsetting to management).

230.    Specifically, while management suggested that it terminated Mr. Koeppel's employment because he refused to "comply" with STPSB's renewed mask mandate, this appears pretextual because STPSB had already granted Mr. Koeppel a medical exemption from wearing a mask based on his disability and related breathing impairment.

231.    During his second just cause hearing, Mr. Cosse fixated at length on the actual content of multiple of Mr. Koeppel's political speeches posted online to social media that were critical of various administrative decisions of the STPSB and its renewed mask mandate.  Mr. Cosse played full length recordings of several of Mr. Koeppel's political speeches posted to online social media, and then questioned and critiqued Mr. Koeppel based on the content of his political speech.  Mr. Cosse admitted that he believed Mr. Koeppel's political speech, made as a citizen on matters of public concern, were "unprofessional," "insubordinate," and "defiant" to STPSB.

232.    Upon information and belief, both Mr. Cosse and Superintendent Jabbia held animus against Mr. Koeppel based on his political activities and perceived political affiliations.  Upon

information and belief, Mr. Cosse recommended Mr. Koeppel be terminated because of his political activities and affiliations, and Superintendent Jabbia did terminate Mr. Koeppel based on that unlawful animus.

233.    At all times, Principal Vitrano, Assistant Superintendent Cosse, and Superintendent Jabbia took their unlawful employment actions against Mr. Koeppel in the full course and scope of their employment.

234.    Accordingly, STPSB is liable to Mr. Koeppel for all his damages arising from management's unlawful actions, including Mr. Koeppel's lost back wages, lost future wages, economic damages, and non-economic damages.

**D.    Unlawful Disparate Treatment Discrimination Based on Retaliation under the First Amendment through Section 1983 against Frank Jabbia Solely in His Individual Capacity**

235.    Mr. Koeppel states a cause of action for unlawful disparate treatment discrimination based on retaliation under the First Amendment through 42 U.S.C. § 1983 against Frank Jabbia solely in his individual capacity.  Plaintiff incorporates here all prior allegations in this complaint.

236.    The First Amendment prohibits a public employer from terminating a public employee for speaking "on issues of public importance."  *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563, 574 (1968).  "Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record."  *Connick v. Myers*, 461 U.S. 138, 147-48 (1983).  Just this year, the Supreme Court reiterated the importance of restraining the government from retaliating against Americans engaged in political and otherwise protected speech, especially speech that is regarded as unpopular:

> Our representative democracy only works if we protect the "marketplace of ideas." This free exchange facilitates an informed public opinion, which, when transmitted to lawmakers, helps produce laws that reflect the People's will. That protection must include the protection of unpopular ideas, for popular ideas have less need for protection. Thus, [government has] a strong interest in ensuring that future generations understand the workings in practice of the well-known aphorism, "I disapprove of what you say, but I will defend to the death your right to say it."

*Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, __ U.S. __; 141 S.Ct. 2038, 2046 (2021).

237.    In turn, "[t]o prevail on a § 1983 First Amendment retaliation claim, a public employee must establish the following: (1) she suffered an adverse employment action; (2) her speech involved a matter of public concern; (3) her interest in commenting on matters of public concern outweighs the employer's interest in promoting efficiency; and (4) her speech motivated the employer's adverse action." *Modica v. Taylor*, 465 F.3d 174, 179–80 (5th Cir. 2006). Nevertheless, under Louisiana state law, no Louisiana employer has any lawful business justification to terminate an employee because of his or her political activities. *Davis v. La. Computing Corp.*, 394 So.2d 678, 679-80 (La. Ct. 4 App. 1981).

238.    During his second just cause hearing, Assistant Superintendent Cosse admitted that he served as Superintendent Jabbia's liaison with respect to Mr. Koeppel's disciplinary process. On August 13, 2021, Superintendent Jabbia issued a letter to Mr. Koeppel indicating that his decision to terminate Mr. Koeppel was based on Mr. Cosse's recommendation as a result of the second just cause hearing. Upon information and belief, Mr. Cosse fully shared the entire contents of the meeting with Superintendent Jabbia, and Mr. Jabbia had been fully aware of management's retaliatory animus against Mr. Koeppel since his political speech and activities began. Upon information and belief, Superintendent Jabbia shared Mr. Cosse's retaliatory animus against Mr. Koeppel, as evinced by Principal Vitrano's remarks that Mr. Jabbia was displeased with Mr. Koeppel's public remarks at a prior STPSB meeting. Upon information and belief, Superintendent

Jabbia had no legitimate reason to terminate Mr. Koeppel but-for retaliatory animus against him based on his political speech, activities, and perceived affiliations.

239.    Upon information and belief, Superintendent Jabbia terminated Mr. Koeppel purposefully, maliciously, or with reckless indifference to his right to be free from retaliation because of his protected political speech.  Upon information and belief, Superintendent Jabbia knew at the time he terminated Mr. Koeppel's employment in retaliation against him based on his political speech that doing so was illegal and specifically unconstitutional under both binding Supreme Court and U.S. Fifth Circuit decisional law.  Upon information and belief, Superintendent Jabbia knew that Mr. Koeppel's political speech had not and was not causing any disruptions to the learning, educational, or work environment at FHS or more generally the St. Tammany Parish school system.  Upon information and belief, Superintendent Jabbia held retaliatory animus against Mr. Koeppel based on his political speech because Mr. Jabbia disagreed with Mr. Koeppel for typical political reasons or otherwise.  Upon information and belief, Superintendent Jabbia's termination decision was objectively unreasonable on its face.  Upon information and belief, Superintendent Jabbia knew that his termination decision was unconstitutional and objectively unreasonable on its face.   Upon information and belief, Superintendent Jabbia terminated Mr. Koeppel's employment in retaliation against him based on his political speech anyway.

240.    Accordingly, Superintendent Jabbia, solely in his individual capacity, is liable to Mr. Koeppel for all his damages arising from Mr. Jabbia's unlawful conduct, including lost back wages, lost front wages, punitive damages, economic damages, non-economic damages, and reasonable attorney's fees and costs incurred in this matter.

## JURY DEMAND

Jonathan Koeppel requests a trial by jury on all issues and causes of action.

## PRAYER FOR RELIEF

WHEREFORE, plaintiff Jonathan D. Koeppel prays that this complaint be deemed good and sufficient; that it and summons be served upon defendants St. Tammany Parish School Board and Frank J. Jabbia; and, after due proceedings are had, that judgment be entered in favor of plaintiff and against defendants for all damages and equitable relief due to plaintiff, including lost back wages, lost future wages, compensatory damages, statutory damages, punitive damages (solely with respect to Mr. Koeppel's Section 1983 claim against Mr. Jabbia in his individual capacity), litigation costs, reasonable attorney's fees, and legal interest from the date of demand, and for all other general and equitable relief to which plaintiff is entitled.

Respectfully submitted:

/s/ Kevin S. Vogeltanz
Kevin S. Vogeltanz, TA (Bar #32746)
Alec W. Szczechowski (Bar #38422)
The Law Office of Kevin S. Vogeltanz, LLC
823 Carroll Street, Suite A / Mandeville, LA 70448
Telephone:  (504) 275-5149
Facsimile:  (504) 910-1704
Email: vogeltanz@gmail.com

*Attorneys for Jonathan D. Koeppel*

**Clerk of Court:**
**Please hold summons pending attempt to secure wavier of summons**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

**JONATHAN D. KOEPPEL**

      **Plaintiff,**

   **v.**

**ST. TAMMANY PARISH SCHOOL BOARD
and FRANK J. JABBIA**

      **Defendant.**

**CIVIL NO. PENDING**

## <u>DECLARATION OF JONATHAN KOEPPEL</u>

I, Jonathan Koeppel, am over the age of 18 years, and declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the following facts are true and correct to the best of my knowledge and recollection at the time this declaration is made:

1.      I am the named plaintiff in the lawsuit *Koeppel v. St. Tammany Parish School Board et al.* soon to be filed in the United States District Court for the Eastern of Louisiana.

2.      I authorized my attorney, Kevin S. Vogeltanz, to file the original Complaint in this matter and to assert all of the causes of action included therein.

3.      I verify that, at the time of its filing, each allegation of the Complaint (either as directly stated or as stated in the alternative) is true and correct to the best of my knowledge, information, memory, and belief.

Executed on this date   10/3/2021  _____

DocuSigned by:

*Jonathan Koeppel*

139EDA7F5C76441...

Jonathan Koeppel